486 So.2d 849 (1986)
STATE FARM FIRE & CASUALTY COMPANY
v.
Leon Dudley WILLIAMS, III, and Elizabeth B. Williams.
No. CA 85 0691.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*850 Anthony J. Clesi, Baton Rouge, for plaintiff-appellee State Farm Fire and Cas. Co.
Billy O. Wilson, Baton Rouge, for intervenor first appellant Gerard Furniture Inc.
Don R. Beard, John R. Shea, Baton Rouge, for intervenors appellees Beard and Shea.
Pamela A. Moses, Baton Rouge, for defendant-second appellant Elizabeth B. Williams Riley.
Patrick W. Pendley, Plaquemine, for intervenor appellee Freeman and Pendley, Ltd.
Leon Dudley Williams, III, in pro. per.
Michael A. Patterson, Baton Rouge, for intervenors appellees Middleton and Wolf.
Before LOTTINGER, COLE and CRAIN, JJ.
LOTTINGER, Judge.
This matter involves two separate appeals from a judgment distributing the proceeds of a concursus proceeding pursuant to a compromise settlement entered into by some of the parties therein.

FACTS
Leon D. Williams III and Elizabeth Boyette Williams, now Riley, were married in 1979 and divorced in 1981. During the latter part of the marriage a fire destroyed certain community and separate property. As a result of conflicting claims, the parties' fire insurer deposited the full amount due under the policy into the registry of the court and invoked a concursus proceeding. Williams and Riley were named as defendants, and several of their creditors intervened, asserting various interests in the funds.
One such creditor was Gerard Furniture Company, Inc., (Gerard) who had sold Williams some furniture on credit and accepted an assignment of his interest in the concursus proceeds, up to the amount of the debt.
Another such creditor was the law firm of Middleton and Wolf who had accepted an assignment from Riley of her interest in the concursus proceeds up to the amount of the fees owed. Both assignments are dated June 1, 1982.
Throughout the proceedings, a number of settlement agreements were entered into. On June 10, 1982, a settlement agreement (settlement # 1) was entered into between Williams and Riley in an attempt to compromise their conflicting claims regarding the proceeds. On August 19, 1982, another settlement agreement (settlement # 2) was entered into between Williams and Riley which, in effect, revoked settlement # 1. Neither settlement agreement was consented to by any of the intervening creditors.
After trial, the trial judge determined the ownership of the destroyed property and allocated the funds accordingly. This judgment was appealed, and this court reversed *851 and remanded to the trial judge to determine the validity of settlement agreement # 2, and to resolve various issues relative to Riley's assignment to Middleton and Wolf. State Farm Fire & Casualty Company v. Williams, 453 So.2d 309 (La.App. 1st Cir.1984).
On remand, the trial judge found that certain language in settlement # 2 revoked settlement # 1, and upheld the validity of settlement # 2. The court allocated the funds accordingly, and upheld the assignment to Middleton and Wolf regarding their interest in Riley's share of the proceeds. The assignment to Gerard Furniture Company was upheld, but because of the low amount due Williams under the settlement agreement and the number of Williams' creditors, the claim was unsatisfied.
From this judgment, both Gerard and Riley have appealed. During the pendency of this appeal a third settlement agreement (settlement # 3) was entered into between Gerard and Riley in an attempt to settle the appealed issues. The appeals of each party will be handled separately.
APPEAL OF GERARD FURNITURE COMPANY, INC.
In its appeal, Gerard alleges that it had an interest in settlement # 1 by virtue of a stipulation pour autri in its favor contained therein, and that Williams and Riley could not revoke that stipulation pour autri by entering into settlement # 2, without Gerard's consent. Also, Gerard contends that Williams could not unilaterally enter into a settlement agreement after assigning his interests in the proceeds to his creditors, and that settlement # 2 was an attempt to defraud his creditors because Williams was insolvent and knew his creditors' claims exceeded any amount of the proceeds which he would receive.
Regarding the alleged stipulation pour autri, we note that it is raised for the first time on appeal. It was not raised in the pleadings and apparently not considered by the trial court. This court will consider only issues before the trial court and not issues raised for the first time on appeal. Uniform RulesCourts of Appeal, Rule 1-3; Richardson v. Stan Weber & Associates, Inc., 400 So.2d 1196 (La.App. 1st Cir. 1981).
In any event, we conclude that the settlement agreement did not contain a stipulation for the benefit of Gerard. It is well settled that a stipulation pour autri must clearly reveal the intent of the contracting parties to stipulate some advantage for the third party. Teachers' Retirement System of Louisiana v. Louisiana State Employees Retirement System, 444 So.2d 193 (La.App. 1st Cir.1983), rev'd on other grds 456 So.2d 594 (La.1984); HMC Management Corporation v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4th Cir.1979), writs denied, 378 So.2d 1384, 379 So.2d 11 (La.1980). In addition, the fact that a third party may incidentally derive a benefit from a contract does not in and of itself mean the contract contains a stipulation pour autri. Teachers Retirement System of Louisiana, supra.
In the present case, the alleged stipulation pour autri provided that "Leon Dudley Williams III will receive the remainder [of the proceeds] after the claims of Gerard Ruth are paid or settled." Nothing is mentioned regarding the furniture company, and it is clear that the parties did not intend to confer a benefit to Gerard. Rather, the reference to the "claims of Gerard Ruth" is incidental to the settlement agreement, which was an attempt to settle the dispute and end pending litigation between Williams and Riley. Therefore, we conclude no stipulation pour autri was contained in settlement # 1.
Regarding the second alleged error, a reading and interpretation of the assignment to Gerard establishes that no error was committed. The document provides that Gerard has the right to collect the money owed it from "funds realized by assignor [Williams]" from the concursus proceeding, and authorizes the clerk of court to "make any payment due and owing or to become due and owing to assignor [Williams]" to Gerard Furniture Company, *852 up to the amount of the debt. Furthermore, Gerard is empowered to "ask, demand, sue for, collect, receipt, compound and give aquittance for the said claim or claims or any part thereof."
Nothing in the instrument precludes "the funds realized by assignor" from being determined pursuant to a settlement agreement between Williams and Riley. Furthermore, nothing provides Gerard with a secured or vested interest in the proceeds, so that any settlement agreement would require Gerard's consent. The document merely provides that Gerard would be entitled to any proceeds due Williams from the proceedings. However, nothing prevented Williams from settling his claims to determine the amount of money due him. This is especially clear when it is considered that the debt owed Gerard was never extinguished nor relinquished as consideration for the assignment.
Therefore, we conclude that settlement # 2 was, as found by the trial judge, valid, and not prohibited by the assignment to Gerard.
Gerard also alleges error in concluding that Williams was solvent and settlement # 2 was not an attempt to defraud his creditors. However, these are factual conclusions, which, based on the record, we are unable to conclude were manifestly erroneous.

APPEAL OF ELIZABETH RILEY
The claims of Middleton and Wolfe are for legal fees incurred in the representation of Riley on a number of instances. When the firm experienced problems collecting the fees from Riley, Riley signed two promissory notes representing a total debt of $21,599.06. An additional $3,856.35 was due, but not represented by any promissory notes. The latter figure, was reduced by the trial judge to $2356.35 and is not questioned on appeal. In regards to the notes, the trial judge was of the opinion that the execution of these notes constituted a novation of the legal fee obligation, which was replaced by the notes. Since the legal fee obligation was extinguished, the trial judge did not assess the reasonableness thereof.
Riley contends that this was error, and the fees were unreasonable. She also alleges that she was forced to sign the notes, as well as the assignment to the law firm through fraud and duress.
That an attorney can only charge reasonable fees to his clients cannot be questioned. Horton v. Butler, 387 So.2d 1315 (La.App. 1st Cir.1980). The record establishes that the law firm of Middleton and Harden and its successor, Middleton and Wolf, represented Riley for approximately eight months. During this time, Riley was represented in one form or another in at least ten different lawsuits in which she was involved. Some of these suits involved complex issues and required the preparation and filing of complicated pleadings and a number of court appearances, not to mention the research involved. The work was extensive enough to require the efforts of two attorneys and a law clerk, sometimes simultaneously.
At trial numerous documents were introduced to establish the amount of time and effort expended on Riley's legal needs. It was clearly established that 428.25 hours were logged by the firm in handling matters for Riley during this period. This was established through records kept by the law firm, as well as a synopsis of the work performed which was prepared in anticipation of trial.
Also established at trial was the agreement between Riley and the law firm that Riley would pay $75 dollars per hour for work by the attorneys, and $25 per hour for work by the law clerk. Although denied, monthly statements of the balance of the account were sent to Riley, which statements she never questioned. In addition, time sheets kept by the law firm verified the amount of time spent by each attorney and the law clerk on each case were introduced into the trial record.
Although there was conflicting testimony regarding certain time charged and charges for certain work performed, we *853 conclude that, considering the type and amount of work performed, the amount represented by the promissory notes is not unreasonable. Computations establish the average charge per hour to be $59.44, and it was established at trial that some time was not billed to Mrs. Riley. This is not unreasonably high.
Riley also alleges the presence of fraud and duress which forced her to sign the promissory notes and assignment. The trial judge disposed of this argument by concluding, as a fact, that Riley was not coerced or placed in a position of peril or loss of fortune in executing the notes, as was alleged. The judge noted that Riley was a very astute business person and knew exactly what she was signing. These determinations were based on credibility assessments as well as weighing the various conflicting testimony. After a thorough review of the record, we are unable to conclude that these findings were manifestly erroneous.

SETTLEMENT NO. 3
During the pendency of this appeal, settlement # 3, between Riley and Gerard was filed with this court and asserted as the basis for a final judgment between those two parties. However, this "settlement," was not presented to, nor considered by the trial court, and no motion to dismiss the appeal of Gerard was filed with this court. As such, settlement # 3 is not properly before us.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be shared equally by the appellants, Gerard Furniture Company, Inc. and Elizabeth Boyette Williams Riley.
AFFIRMED.